[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 489.]

CINCINNATI BAR ASSOCIATION *v.* SCHWARTZ.

[Cite as *Cincinnati Bar Assn. v. Schwartz*, 1996-Ohio-290.]

*Attorneys at law—Misconduct—Public reprimand—Pursuing client's personal injury action and accepting legal fees from client's insurance carrier in exchange for the attorney's efforts to collect reimbursement for the carrier of its payment of client's medical expenses without disclosing dual employment to client for client's consent.*

In pursuing a client's personal injury action, an attorney cannot ethically accept legal fees from the client's insurance carrier in exchange for the attorney's efforts to collect reimbursement for the carrier of its payment of the client's medical expenses, unless the client specifically consents to the dual employment after full disclosure.

(No. 95-838—Submitted September 27, 1995—Decided February 14, 1996.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 93-51.

———————————

{¶ 1} In a complaint filed on August 16, 1993, relator, Cincinnati Bar Association, charged respondent, Robert L. Schwartz of Cincinnati, Ohio, Attorney Registration No. 0000818, with violations of, *inter alia*, DR 5-105(A) (failure to decline proffered employment where lawyer's independent professional judgment on a client's behalf may be adversely affected), 5-105(B) (failure to cease continued employment by multiple clients where lawyer's independent judgment on a client's behalf may be adversely affected), and 5-107(A)(1) (acceptance of compensation for services to client from another source, without client's consent after full disclosure). A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard the matter on February 17, 1995.

**{¶ 2}** The evidence submitted by the parties established that respondent agreed to represent Lola Thomas in her claim to recover damages for personal injuries sustained in an April 1992 automobile accident. Thomas contracted to pay respondent one-third of the "gross sum" recovered on her claim, and he retained as his fee $833.33, or one-third of the $2,500 for which Thomas ultimately agreed to settle the matter. From Thomas's share of the settlement proceeds, respondent also deducted other expenses in the amount of $825.17, including $493.83 to pay Thomas's health insurance carrier's claim for reimbursement of the medical expenses it had paid on her behalf. Thomas's insurance carrier had earlier offered to discount its reimbursement demand by "a proportionate share of the legal expenses incurred in effecting a settlement." Respondent accepted the offer and retained the additional sum of $164.61, or one-third of the reimbursable medical expenses, from the settlement proceeds. Respondent deposited this amount in his client trust account where it has remained pending disposition of this cause; however, he admitted that he took the amount initially in payment for his legal services to the insurance company.

**{¶ 3}** At the hearing, respondent explained that he had retained the additional $164.61 for "protect[ing]" the insurance carrier's claim for reimbursement. He also assured the panel that he had advised Thomas indirectly of his fee arrangement with her insurance company by providing her with copies of his and the company's correspondence. Thomas, however, claimed she had known nothing about the arrangement, and respondent later conceded that he had not discussed his dual representation with Thomas or obtained her specific consent to it.

**{¶ 4}** Respondent eventually returned the $164.61 to Thomas after she filed her grievance with relator. First, however, respondent sent Thomas a new invoice requesting an additional $188.42 more for his legal services. Respondent claimed that he sent this invoice because he had initially misunderstood Thomas's complaint

to relator and relator's investigation as being the preliminary stages of a mediated fee dispute. [Resp. Ex. O] Apparently, he had hoped to justify his fee with the revised bill by showing that he might have fairly charged Thomas more than he had originally.

{¶ 5} The panel found that respondent had violated DR 5-105(A) and (B), as well as 5-107(A)(1). In recommending a sanction for this misconduct, the panel considered respondent's expressed remorse and the many favorable accounts of his competence and integrity offered by members of the local bench, bar and community. The panel recommended that respondent receive a public reprimand, and the board adopted the panel's findings of fact, conclusions of law, and recommendation.

---

*Edwin W. Patterson III*, Bar Counsel; *Kevin L. Swick* and *Peter W. Swenty*, for relator.

*James N. Perry*, for respondent.

---

*Per Curiam*.

{¶ 6} In his objections to the board's report, respondent claims that he did not commit the cited misconduct because he notified his client that he was accepting a legal fee from her insurance company, the interests of Thomas and her insurance carrier were not in conflict, he did not use the fee for his own benefit, and he repaid the fee after his client complained to relator. For the reasons that follow, we overrule respondent's objections and agree with the board's findings that he violated DR 5-105(A) and (B), and 5-107(A)(1).

{¶ 7} Under DR 5-105(C), an attorney may accept or continue employment by two or more clients having potentially competing interests only if (1) it is "obvious" that all the clients' interests can be represented adequately by a single attorney, (2) all the clients have been fully informed as to possible conflicts, and

(3) all the clients have knowingly consented to the multiple representation. Moreover, mere notice to clients is not sufficient to avoid such charges of misconduct. Rather, "it [is] incumbent upon [an attorney] to advise those clients possessing competing interests of any potentially adverse effects which might cause [the attorney] to support for one client what his professional duty for the other required him to oppose." *Bar Assn. of Greater Cleveland v. Shillman* (1980), 61 Ohio St.2d 364, 367, 15 O.O.3d 443, 445, 402 N.E.2d 514, 576.

{¶ 8} Respondent's representation of Thomas and her insurance carrier satisfied none of these prerequisites. Thomas's interests were obviously in conflict with those of the insurance company -- both were competing for shares of the settlement proceeds. In the end, respondent entered the competition himself, taking fees that at once reduced Thomas's portion and compensated him in excess of their contingency-fee agreement. See *Cincinnati Bar Assn. v. Schultz* (1994), 71 Ohio St.3d 383, 385, 643 N.E. 2d 1139, 1141. Respondent also failed to fully explain to Thomas the possible conflict between all these competing interests; he apparently did not appreciate the potential for conflict himself. Finally, while respondent may have notified Thomas that he had negotiated with her insurance company for his receipt of legal fees, he acknowledges that he did not secure her specific consent, which is mandatory in matters of multiple representation. Accord *Shillman, supra,* 61 Ohio St.2d at 367, 15 O.O.3d at 445, 402 N.E.2d at 517.

{¶ 9} In *Cincinnati Bar Assn. v. Fehler-Schultz* (1992), 64 Ohio St.3d 452, 597 N.E.2d 79; the attorney retained over $8,000 from the client's settlement as a "subrogation fee," i.e., a fee for pursuing the claim of the client's insurer for reimbursement of medical expenses paid on the client's behalf. While it is true that this court found no violation of DR 5-105(A) or (B), our disapproval of the attorney's failure to provide full disclosure to the client and to secure his client's consent is implicit in our holding in that case. We disapprove of this practice. Accordingly, we hold that in pursuing a client's personal injury action, an attorney

cannot ethically accept legal fees from the client's insurance carrier in exchange for the attorney's efforts to collect reimbursement for the carrier of its payment of the client's medical expenses, unless the client specifically consents to the dual employment after full disclosure.

{¶ 10} We also reject respondent's contention that he did not "accept" the sum of $164.61 in legal fees for the purpose of DR 5-107(A)(1). Respondent deposited this amount in his client trust account because he believed it was the subject of a fee dispute, and that therefore this deposit was required by DR 9-102(A)(2), and he repaid this amount when he realized his mistake in having taken it. Neither act alters the facts that he initially retained these fees as payment from a source other than his client, or that he did so without complying with the full disclosure and specific client consent requirements that DR 5-107(A)(1) also imposes.

{¶ 11} Accordingly, we find clear and convincing evidence that respondent committed the misconduct cited by the board, and we accept its recommended sanction. Respondent is therefore publicly reprimanded for having violated DR 5-105(A) and (B), and 5-107(A)(1). Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____